Brian A. Newman CSBN 89975
Law Offices of Brian A. Newman
Attorneys & Counselors at Law
225 Avenue I, Suite 201
Redondo Beach, California  90277
(310) 316-6622; Fax: (310) 316-5511
Email: jjnewbee@sbcglobal.net
Attorney for Defendant Kenneth Bernard Riley

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: CR-07-1049-VBF |
| | ) | |
| Plaintiff, | ) | POSITION OF DEFENDANT |
| | ) | KENNETH BERNARD RILEY WITH |
| vs. | ) | RESPECT TO SENTENCING FACTORS |
| | ) | |
| KENNETH BERNARD RILEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Defendant Kenneth Bernard Riley, through his attorney Brian A. Newman, files his Position With Respect To Sentencing Factors as follows:

**SEVERE MEDICAL CONDITION**

Mr. Riley has been extremely ill since his arrest.  In fact, he has nearly died at least twice.  Mr. Riley has been hospitalized on at least two occasions.

Mr. Riley has had major surgery (his colon was surgically removed) and he must use colostomy bags for the rest of his life. He has also suffered through several infections.  Part of the seriousness of his health condition was caused due to a mis-diagnosis and mistreatment at the Metropolitan Detention Center.

1

(he was forced to use the wrong type and size bags and was forced to use the same colostomy bags over and over and had to use scotch tape on the bags to hold them in place).

On approximately October 27, 2011, Mr. Riley was seen at the Glendale Adventist Hospital because he continues to have severe problems, including continual rectal bleeding.  Mr. Riley informed the undersigned that his physician informed him that White Memorial Hospital had not removed his entire colon (as Mr. Riley had been told during his White Memorial Hospital stay after surgery) and the fact that only ninety percent (90%) had been removed, leaving a remainder of his colon.  He was told this is the reason for his continued colitis and bleeding.  Further, Mr. Riley informed the undersigned that the physician informed him that he is being referred to Cedars-Sinai Hospital, to be seen by a "colon specialist" as Mr. Riley is a strong candidate to develop cancer.

Counsel has obtained a medical progress report from Dr. Robert Pereyra regarding Mr. Riley's October 27, 2011 examination [see report of Dr. Pereyra attached hereto as Exhibit "A"].  Dr. Pereya states that "He shows extensive evidence of lymphocytic infiltrate and focal cryptitis in the residual rectum."  Dr. Pereya further states that "He does have persistent rectal drainage".  [see report of Dr. Pereyra attached hereto as Exhibit "A"].  Dr. Pereya believes there are two possible resolutions for Mr. Riley, either an illeoproctostomy (artificial colon) or a prctectomy "for cancer risk reduction". [see report of Dr. Pereyra attached hereto as Exhibit "A"].

Further, the physician informed Mr. Riley that if the

2

colostomy bag is removed and Mr. Riley's remaining colon reconnected to his intestines, it is a certainty he would develop cancer sooner.

Mr. Riley's life expectancy and his quality of life has been greatly reduced due to his continued medical problems.

When Mr. Riley first became ill, the Metropolitan Detention Center/Bureau of Prisons staff accused Mr. Riley of faking an illness, told by the staff that he only had hemorrhoids, and the staff would not allow him to receive medical care in a timely manner.  Due to the delay in Mr. Riley being seen by the medical staff exacerbated his condition, and led him to severely hemorrhage, at which time the Metropolitan Detention Staff finally consented to allow Mr. Riley to be seen by an outside medical facility.

The Metropolitan Detention Center and the Bureau of Prisons have proven their inability to provide Mr. Riley with the proper medical care he continually needs for his condition.  A hospital setting where he can receive medical treatment is the only place where Mr. Riley should be placed.

The probation officer, in his letter to the Court, page 4, states that "the past four years of his custody at MDC have been difficult due to his constant illness and the necessity of making life-changing medical decision without having his family by his side."

The probation goes on to state that **"Incarceration is undoubtedly more harsh on this defendant because of his physical limitations."** [emphasis added].

Being submitted concurrently herewith is a DVD containing

3

Mr. Riley's voluminous medical records, as evidence of his severe illness.

**JUSTIFICATION FOR DOWNWARD DEPARTURE FOR SEVERE MEDICAL CONDITION**

*United States Sentencing guidelines §5H1.4* (11/1/10) policy statement discourages downward departures based upon physical condition of the defendant.  However, the guideline goes on to state that "Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an **unusual degree and distinguishes the case from the typical cases** covered by the guidelines. An **extraordinary** physical impairment may be a reason to depart downward; e.g. , **in the case of a seriously infirm defendant**, home detention may be as efficient as, and less costly than, imprisonment." [emphasis added].

And, *United States Sentencing Guidelines §5K2.0(B)* (11/1/10) allows a downward departure for "Unidentified Circumstances - A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."

Further, *United States Sentencing Guidelines App. B (11/1/10)*, states that "'An **extraordinary physical impairment** may be a reason to impose a sentence below the applicable guideline range only if and to the extent permitted by Sec. 5H1.4." [emphasis added].  "(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not

4

greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider– . . . **(D)** to provide the defendant with needed educational or vocational training, **medical care**, or other correctional treatment in the most effective manner . . ." *United States Sentencing Guidelines APP. B* (11/1/10) [emphasis added].

## TITLE 18 U.S.C. §3553 FACTORS

Mr Riley acknowledges that he faces a mandatory minimum sentence of 60 months and believes that such a sentence is adequate under these circumstances for this Defendant.

Mr. Riley respectfully requests the Court consider the letters and exhibits from Mr. Riley's family and friends, which demonstrates his character being filed concurrently herewith.

Title 18 U.S.C. §3553(a) requires courts to "impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in Section 3553(a)(2). Further, "(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider– . . .

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed– (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; © to protect the public from further crimes of the defendant; and (D)to provide the defendant with needed educational or vocational training, **medical care**, or other correctional treatment in

5

the most effective manner . . ." *United States Sentencing Guidelines* Title 18 United States Code §3553

With regard to sentencing, <u>Title 18 United States Code §3582(a)</u> provides:

> (a) *Factors To Be Considered in Imposing a Term of Imprisonment.*
> - The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*. . . . [emphasis added].

The court should also consider the formerly prohibited factors such as age, education and vocational skills, her employment record, his socio-economic status, in conjunction with the advisory guideline range <u>because they are what make up the "history and characteristics" of the defendant</u> set forth in <u>Section 3553(a)(1)</u>.

The sentencing court can take into consideration, without limitation, "any information concerning background, character and conduct of the defendant, unless otherwise prohibited by the guidelines or the law." <u>United States v. Brown</u>, 985 F.2d 478 (9th Cir. 1993) at page 481.

<u>Koon</u> made it clear that the sentencing court " . . . cannot be precluded categorically from considering any factor at sentencing so long as that factor is not one of the 'forbidden' factors outlined in the guidelines. Green at 1207; see also <u>Koon & Powell v. United States</u>, 116 S.Ct. 2035, 2044-45 135 L.Ed.2d 392, (1996); 34 F.3d 1416 (9th Cir. 1994) reh en banc denied 45 F.3d 1303 (9th Cir. 1995).

United States Supreme Court Justice Stevens set forth in his opinion in United States v. Booker/Fanfan 543 U.S. 220, 125 S.Ct. 738, 2005 WL 50108, 1 (2005)(hereafter referred to as "Booker") that the sentencing guidelines may be considered as advisory along with the facts of the case in determining the appropriate sentence.  Thereafter, Booker did away with any "forbidden" factors, leaving any adjustment of sentencing factors to the discretion of the Court.

Judge J. Adelman, in United States v. Ranum, 353 F.Supp.2d 984, 2005 WL 161223 (2005) U.S. Dist. Lexis 1338 (E.D. Wis. Jan. 19, 2005) stated that imposing a sentence outside the guideline range need not be determined by "old departure methodology".

Judge J. Pratt, in United States v. Myers, 353  F.Supp.2d. 1026, 2005 WL 165314, 2005 U.S. Dist. Lexis 1342 (S.D. Iowa Jan. 26, 2005), found that *Booker* should be viewed "as an invitation, not to unmoored decision making, but to the type of careful analysis of the evidence that *should* be considered when depriving a person of his or her liberty."

Judge J. Sweet, in United States v. West, 2005 WL 180930, 2005 U.S. Dist. Lexis 1123 (S.D.N.Y. Jan. 27,2005) stated that the guidelines are only one factor to consider.  Judge Sweet stated that "Accordingly, this Court will sentence West based upon the facts admitted in connection with plea and upon those facts found by the Court in the context of analysis under subsection 3553(a), as limited by *Apprendi* and *Booker*."

In the aftermath of United States v. Booker, 534 U.S. 220, 125 S. Ct. 738 (2005), this court is required to consider both the advisory guidelines and the factors set forth in 18 U.S.C. §

7

1    3553(a).  <u>125 S. Ct. at 757</u>.

2          In determining the sentence to impose within the advisory

3    guideline range, or whether a departure from the advisory

4    guidelines is warranted, the court may consider, *without*

5    *limitation*, any information concerning the background, character

6    and conduct of the defendant unless otherwise prohibited by law.

7    *See*  <u>18 U.S.C. §3661</u>.

8          As one district court judge has already observed:

9                The guidelines are not binding, and courts
               need not justify a sentence outside of them
10               by citing factors that take the case outside
               the "heartland."  Rather, courts are free to
11               disagree, in individual cases and in the
               exercise of discretion, with the actual
12               range proposed by the guidelines, so long
               as that the ultimate sentence is reasonable
13               and carefully supported by reasons tied to
               the § 3553(a) factors.

14
               Sentencing will be harder now than it was a
15               few months ago.  District courts cannot just
               add up figures and pick a number within a
16               narrow range.  Rather, they must consider all
               of the applicable factors, listen carefully
17               to defense and government counsel, and
               sentence the person before them *as an*
18               *individual*.  <u>Booker</u> *is not*  an invitation to
               do business as unusual. <u>*United States v.*</u>
19               <u>*Ranum,*</u> 2005 WL 161223 (E.D. Wis.), pp 2-3.

20         Because the advisory guideline range is now simply one of a

21   number of Section 3553(a) factors, each of which should be given

22   equal weight, this court should arguably determine the sentence

23   *first* using the traditional Section 3553(a) factors, then check

24   its conclusions against what the guidelines recommend. That

25   sentence, encompassing all of the factors, including those that

26   are prohibited or discouraged, <u>should necessarily be lower</u>,

27   because the advisory guideline range does not include previously

28   prohibited or discouraged factors.

8

1   It is well established that a "unique combination of

2   factors may constitute a 'circumstance'" in mitigation of

3   sentence.  <u>United States v. Patillo</u>, 817 F.Supp. at 845 (C.D.

4   Cal. 1993)(combination of minor role, aberrant behavior and

5   assistance to probation officer during L.A. riots).  In <u>United</u>

6   <u>States v. Cook</u>, 938 F.2d 149 (9th Cir. 1991), the Ninth Circuit

7   observed:

8   In making a decision in any particular case, good judgment

9   will often require the evaluation of a complex of factors.  No

10  single factor may be enough to point to the wise course of

11  decision.  But a wise person will not look on each particular

12  factor abstractly and alone.  Rather, it will be how the

13  particular pieces fit together, converge, and influence each

14  other that will lead to the correct decision. 938 F.2d at 153.

15  With regard to the formulation of an appropriate sentence, it

16  has also been noted that:

17          "Mercy is seldom included on the list of
            'traditional' rationales for sentencing. . .
18          The notion that undue harshness should be
            avoided by those sitting in judgment has long
19          been a part of the human fabric and spirit.
            Lenity is often the desirable  route." <u>United</u>
20          <u>States v. Blarek</u>, 7 F. Supp. 2d 192, 210-11
            (E.D. N.Y. 1998).
21

22      Finally, in <u>Koon v. United States</u>, 518 U.S. 81, 113, 116

23  S.Ct. 2035 (1996), the Supreme Court reiterated a sentencing

    court's obligation:
24

25          "It has been uniform and constant in the
26          federal judicial tradition for the sentencing
            judge to consider every convicted person as
27          an individual and every case as a unique
            study in the human failings that sometimes
28          mitigate, sometimes magnify, the crime and

9

punishment to ensue."

## **CONCLUSION**

Mr. Riley respectfully requests the Court to consider that a fair and equitable sentence would be 72 months and three years probation.

As this Honorable Court is aware, Mr. Riley is a very ill individual.  He will never be able to live a "normal" life again. He will have colostomy bag attached to him for the rest of his life.  The doctors have told him that should he attempt to re-attach his colon he will certainly contract cancer of the colon. He still requires months and months of medical treatment. Although Mr. Riley has some past serious convictions, he does not possess a lengthy criminal record.

HOWEVER, his days of committing any crimes have passed.  At the time of his arrest, he had already turned his life around. He has a full-time job and was enjoying his family.  A 72 month sentence is no easy sentence.  Any time he serves in custody, as evidenced by the time he has already been in custody, and acknowledgment by the probation officer in the Presentence Report has been, and will continue to be, more difficult and more dangerous than the average prisoner.  He has been close to death twice by because of the treatment he has received at the Metropolitan Detention Center, he nearly "hemorrhaged out".  Mr. Riley has had persistent infections at the opening of the colon/colostomy bag.  As stated in *United states v. Blarek, supra*, we urge this Honorable Court to show mercy to Mr. Riley.

10

If this court believes additional time is necessary then we urge a sentence combination of custody and house arrest to satisfy that necessity.

   This recommended sentence would satisfy all the criteria set forth as noted above in <u>Title 18 U.S.C. §3553</u>; <u>Title 18 U.S.C. §3582</u>, and <u>Title 18 U.S.C. §3661</u>, and the <u>Federal Sentencing Guidelines</u>.

Dated: January 18, 2012   Respectfully submitted,

                          Law Offices of Brian A. Newman
                          Attorneys & Counselors at Law

                    By:  *Brian A. Newman*
                          BRIAN A. NEWMAN
                          Attorney for Defendant
                          Kenneth Bernard Riley

11

EXHIBIT "A"

DATE OF CONSULATION: 07/17/2011  REFERRING PHYSICIAN: Alireza Tabesh, M.D. : Dr. Sinavsky

REASON FOR CONSULTATION: Ulcerative colitis evaluation, status post surgery.

HISTORY: This is a 48-year-old African American male who has what is he described as subtotal colectomy abdominally with a right lower quadrant stoma for emergency treatment of ulcerative colitis. He has pain at the surgical site. He is eating well with weight. He does not have any bleeding out the stoma. He does have persistent rectal drainage. He does not have hemorrhoids. Occasionally, he bleeds from the rectum. The patient would like to have the colostomy taken apart. He needs to have the lower part scoped.

PHYSICAL EXAMINATION:
General: The patient is awake and alert, trim, in no distress.
Lungs: Clear to auscultation.
Heart: Regular rhythm.
Abdominal: Extensive abdominal incisions are present with old retention suture marks. There is a right lower quadrant stoma, which is normal appearing at this time.
Rectal: Shows moderate hemorrhoid change. Bloody mucoid material is present.

IMPRESSION AND PLAN: Status post total colectomy for presumed ulcerative colitis. We will get pathology report and operative report. The patient clearly needs to be scoped both in the stoma and in the rectum to see if there is any active inflammation still present. If he has active disease still present, it may not be wise to close this ileostomy. The patient should be considered for biopsy and possible proctectomy for cancer risk reduction, but he could have the J pouch closure. The risks and benefits of various approaches are discussed with the patient including for either proctectomy or ileoproctostomy. The patient clearly needs to be scoped first to help decide what his situation is. We will ask Dr. Tabesh to do this and we will follow up with the patient.


_____

Robert Pereyra, M.D.


CC:

RP/5320007; D: 07/17/2011 18:18:00; T: 07/18/2011 02:29:30
BY: 4754; JID: 6181888; BJID: 337555; DID: 5236546


**White Memorial Medical Center**

PATIENT: RILEY, KENNETH DOB: 07/29/1962  MRN: 1150814  ACCT: 53753463  Pt Loc: 10_GIL
**CONSULTATION**                                                          Page  1of1

Dictating Provider Copy

## PROGRESS NOTES

Residence Phone ....................................................

| Name | **RILEY, Kenneth** | **07-29-62** | Business Phone | .................................................... |

**October 27, 2011**

This is inmate. He's had his colonoscopy and biopsy. He shows extensive evidence of lymphocytic infiltrate and focal cryptitis in the residual rectum. Two separate biopsies at two levels were taken, both rectal and colon. He is discussed with consultant colorectal surgeon, Dr. Akopian, who wishes to see patient and possibly re-scope him. Options for this gentleman include leaving him as is, doing ileorectal anastomosis or removing the colon with a variety of reconstructive options, particularly reconstruction options for this patient may involve loss or impairment of sexual function. Patient should be evaluated by a specialist colorectal surgeon. I will get him to see Dr. Akopian in the near future. R. Pereyra, MD:dr

Pt Name: RILEY, KENNETH
MRN: 1150814

**Adventist
Health**
**White Memorial Medical Center**
1720 Cesar E. Chavez Avenue
Los Angeles CA 90033
Phone: (323) 268-5000 ext.1715 - Fax: (323) 265-5086
Medical Director: Ann Z. Tan M.D.

## Surgical Pathology Final Report

**Accession Number:** 10-WS-11-0004315

Collected Date/Time: 8/15/2011 4:20:00 PM PDT
Received Date/Time: 8/15/2011 5:30:00 PM PDT

**Specimen/Site**

1. COLON BIOPSY
2. RECTAL POLYP BIOPSY

**Clinical Information**

no colitis

**Diagnosis**

1. COLON, BIOPSY:
   - BENIGN COLONIC MUCOSA WITH SEVERE CRYPT ARCHITECTURAL
     DISTORTION, DENSE LYMPHOID INFILTRATE, AND CRYPTITIS.
   - NO GRANULOMAS, CRYPT ABSCESSES OR DYSPLASIA IDENTIFIED.
   - NO MALIGNANCY IDENTIFIED (SEE COMMENT)

2. RECTAL POLYP, BIOPSY:
   - BENIGN COLONIC MUCOSA WITH EXTENSIVE CRYPT ARCHITECTURAL
     DISTORTION, LYMPHOID INFILTRATE, AND FOCAL CRYPTITIS.
   - NO GRANULOMAS, CRYPT ABSCESSES OR DYSPLASIA IDENTIFIED.
   - NO MALIGNANCY IDENTIFIED (SEE COMMENT)

AZT:
Verified: 08/19/11 06:02 PDT    Ann Zora Tan, MD, Pathologist
                                (electronic signature)

**Comment**

1. The dense lymphoid infiltrate is most consistent with reactive lymphoid hyperplasia.

Copy to:

Tabesh, MD, Alireza
1701 Cesar Chavez Ave. #510

Los Angeles, Ca 90033

Admit Physician:
Tabesh, MD, Alireza

Family Physician:

Pt Name: RILEY, KENNETH  LOS ANGELES
MRN: 1150814 Acct: 63753863
DOB: 7/29/1962 Age: 49 years Sex: Male
Patient Location: 10-CH
Adm Date: 8/15/2011    Dis Date: 8/15/2011
Print Dt/Tm: 8/29/2011 8:22:56 AM PDT
Page 1 of 2

13232653886    Pathology Office                            07:30:55 a.m.    09-29-2011    2/2

**White Memorial Medical Center**
1720 Cesar E. Chavez Avenue
Los Angeles CA 90033
Phone: (323) 268-5000 ext.1715 - Fax: (323) 266-5086
Medical Director: Ann Z. Tan M.D.

Pt Name: **RILEY, KENNETH**
MRN: **1150314**

# Surgical Pathology Final Report

**Accession Number:** 10-WS-11-0004315

Collected Date/Time:   8/15/2011 12:00:00 PM PDT
Received Date/Time:    8/15/2011 2:50:00 PM PDT

1,2. The above findings may represent the active phase of idiopathic inflammatory bowel disease. However, infectious causes should be excluded first. Recommend correlation with endoscopic, clinical and serologic findings. Recommend close followup.

### Gross Description

1. The specimen consists of four fragments of pale tan tissue measuring up to 0.8 x 0.5 x 0.3 cm in greatest dimension, received fixed in formalin. Entirely embedded in one cassette.

2. The specimen consists of several fragments of pale tan tissue measuring up to 1 x 0.5 x 0.3 cm in greatest dimension, received fixed in formalin. Entirely embedded in one cassette.

AST:BIK

### Microscopic Description

1. Sections of the colon biopsy show benign colonic mucosa with severe crypt architectural distortion by a dense lymphoid infiltrate. Areas of cryptitis are seen. No granulomas, dysplasia, crypt abscesses or malignancy is seen. The following immunostains are performed and result as follows:
CD3: many T lymphocytes positive
CD20: many B lymphocytes positive
CD43: many T lymphocytes positive
CD10: germinal center cells positive
Bcl2: post-germinal center cells positive
CD5: many T lymphocytes positive
kappa and lambda: heterogeneous plasma cell population

The above immunohistochemical findings support the lymphoid infiltrate to be reactive in origin.

### Additional Pathologist Review

This case has been reviewed by second pathologist, ST, who concurs.

RBCBWD
9/29/14
A. SINAVSKY M.D.
CLINICAL DIRECTOR
LOS ANGELES

---

Copy to:

Tabesh, MD, Alireza
1701 Cesar Chavez Ave. #510

Los Angeles, Ca 90033

Pt Name: RILEY, KENNETH
MRN: 1150314   Acct: 53753463
DOB: 7/29/1962 Age: 49 years Sex: Male
Patient Location: 10-GIL
Adm Date: 8/15/2011   Dis Date: 8/15/2011
Print Dt/Tm: 9/29/2011 8:22:56 AM PDT
Page 2 of 2

Admit Physician:
Tabesh, MD, Alireza

Family Physician:

13932G35086   Pathology Office                 07:30:38 a.m.   09-29-2011      1/2

**Adventist Health**
**White Memorial Medical Center**
1720 Cesar E. Chavez Avenue
Los Angeles CA 90033
Phone: (323) 268-5000 ext 1715 - Fax: (323) 265-5086
Medical Director: Ann Z. Tah M.D.

Pt Name: RILEY, KENNETH
MRN: 1150814

## Surgical Pathology Final Report

Accession Number:   10-WS-11-0004315

Collected Date/Time:
Received Date/Time: 8/15/2011 2:50:00 PM PDT

**Specimen/Site**
1. COLON BIOPSY
2. RECTAL POLYP BIOPSY

**Clinical Information**
r/o colitis

**Diagnosis**
1. COLON, BIOPSY:
   - BENIGN COLONIC MUCOSA WITH SEVERE CRYPT ARCHITECTURAL DISTORTION, DENSE LYMPHOID INFILTRATE, AND CRYPTITIS.
   - NO GRANULOMAS, CRYPT ABSCESSES OR DYSPLASIA IDENTIFIED.
   - NO MALIGNANCY IDENTIFIED (SEE COMMENT).

2. RECTAL POLYP, BIOPSY:
   - BENIGN COLONIC MUCOSA WITH EXTENSIVE CRYPT ARCHITECTURAL DISTORTION, LYMPHOID INFILTRATE, AND FOCAL CRYPTITIS.
   - NO GRANULOMAS, CRYPT ABSCESSES OR DYSPLASIA IDENTIFIED.
   - NO MALIGNANCY IDENTIFIED (SEE COMMENT).

AZT
Verified: 08/19/11 06:31 PDT     Ann Zera Tan, MD, Pathologist
                                 (electronic signature)

**Comment**
1. The dense lymphoid infiltrate is most consistent with reactive lymphoid hyperplasia.

Copy to:

Tabesh, MD, Alireza
1701 Cesar Chavez Ave. #510
Los Angeles, Ca 90033

Pt Name: RILEY, KENNETH
MRN: 1150814  Acct: 53753493
DOB: 7/29/1962  Age: 49 years Sex: Male
Patient Location: 10-GR
Adm Date: 8/15/2011  Dis Date: 8/15/2011
Print Dt/Tm: 9/29/2011 8:22:56 AM PDT
Page 1 of 2:

Admit Physician:
Tabesh, MD, Alireza              Family Physician

13232655086    Pathology Office                                07:30:53 a.m.    08-29-2011         2 /2

**White Memorial Medical Center**                                    Pt Name:  RILEY, KENNETH
1720 Cesar E. Chavez Avenue                                          MRN:  1150814
Los Angeles CA 90033
Phone: (323) 268-5000 ext.1715 - Fax: (323) 265-5086
Medical Director: Ann Z. Tan M.D.

## S u r g i c a l   P a t h o l o g y   F i n a l   R e p o r t

**Accession Number:**    10-WS-11-0004315          Collected Date/Time:   8/15/2011 12:00:00 PM PDT
                                                   Received Date/Time:    8/15/2011 2:50:00 PM PDT

1,2.  The above findings may represent the active phase of idiopathic inflammatory bowel disease.  However, infectious causes should be excluded first.  Recommend correlation with endoscopic, clinical and serologic findings.  Recommend close followup.

### Gross Description

1.  The specimen consists of four fragments of pale tan tissue measuring up to 0.8 x 0.5 x 0.3 cm in greatest dimension, received fixed in formalin.  Entirely embedded in one cassette.

2.  The specimen consists of several fragments of pale tan tissue measuring up to 1 x 0.5 x 0.3 cm in greatest dimension, received fixed in formalin.  Entirely embedded in one cassette.

AST:BTK

### Microscopic Description

1. Sections of the colon biopsy show benign colonic mucosa with severe crypt architectural distortion by a dense lymphoid infiltrate. Areas of cryptitis are seen. No granulomas, dysplasia, crypt abscesses or malignancy is seen. The following immunostains are performed and result as follows:
CD3: many T lymphocytes positive
CD20: many B lymphocytes positive
CD43: many T lymphocytes positive
CD10: germinal center cells positive
Bcl2: post-germinal center cells positive
CD5: many T lymphocytes positive
kappa and lambda: heterogeneous plasma cell population

The above immunohistochemical findings support the lymphoid infiltrate to be reactive in origin.

### Additional Pathologist Review

This case has been reviewed by second pathologist, ST, who concurs.

RECEIVED
9/29/11

A. SINAVSKY M.D.
CLINICAL DIRECTOR
SURGICAL DIRECTOR
LOS ANGELES

Copy to:

Tabesh, MD, Alireza                                     Pt Name:  RILEY, KENNETH
1701 Cesar Chavez Ave. #510                             MRN: 1150814  Acct: 53753483
                                                        DOB: 7/29/1962  Age: 49 years Sex: Male
Los Angeles, Ca 90033                                   Patient Location: 10-GIL
                                                        Adm Date: 8/15/2011    Dis Date: 8/15/2011
                                                        Print Dt/Tm: 9/29/2011 8:22:58 AM PDT
                                                        Page 2 of 2

Admit Physician:                          Family Physician:
Tabesh, MD, Alireza

PROOF OF SERVICE
I declare that I am over the age of 18 and not a party to the
within action.  My business address is 225 Avenue I Suite 201
Redondo Beach, CA 90277.
On 1/19/12  I served the following documents: **POSITION OF
DEFENDANT RILEY WITH RESPECT TO SENTENCING FACTORS; EX PARTE
APPLICATION TO FILE DOCUMENT UNDER SEAL; [PROPOSED] ORDER** on the
interested parties in this action by placing a true copy of each
document thereof, enclosed in a sealed envelope addressed as
follows:

John Leulegian
Assistant United States Attorney
United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
VIA CM/ECF

Robert Ramirez Leoning
Probation Officer
United States Courthouse
312 North Spring Street
Los Angeles, CA  90012
VIA FACSIMILE 213-894-3627

( )       By Mail.  I caused such envelope with postage thereon
fully prepaid to be placed in the United States mail at 225 Aveue
I Suite 201 redondo Beach, CA 90277.
(xxx )    By CM/ECF Service.  I caused said document to be
delivered by CM/ECF transmission to the above addressee(s).
(xx )     By FAX Service.  I caused said document to be delivered
by facsimile transmission to the above addressee(s).
( )       By Personal Service.  I caused the envelope to be
delivered by hand to addressees at the addresses indicated.
( )       By Federal Express.  I caused the above documents to
be delivered by Federal Express service.
     (XXX )  (Federal)   I declare that I am employed in the
                         office of a member of the bar of this
                         court at whose direction the service was
                         made.
     ( )     (State)     I declare under penalty of perjury
                         under the laws of the State of
                         California that the above is true  and
                         correct.

*Sahnde Moulton*
SAHNDE MOULTON

12